**UNITED STATES of America,**
**Libellant,**
v.
**ONE 1958 FORD 4-DOOR SEDAN, Serial**
**No. W8NC-124493.**
**Civ. A. No. 133-G-58.**

United States District Court
M. D. North Carolina,
Greensboro Division.
Oct. 13, 1958.

644

James E. Holshouser, U. S. Atty., and Lafayette Williams, Asst. U. S. Atty., Greensboro, N. C., for United States of America, libellant.

Gavin, Jackson & Gavin, Sanford, N. C., for Ralph Woodrow Wilson, intervenor.

STANLEY, District Judge.

This is a proceeding under Sections 5601, 7301 and 7302 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 5601, 7301 and 7302, for the forfeiture of an automobile.

The libel of information was filed on July 3, 1958, and was tried before the court without a jury on September 10, 1958. At the conclusion of the trial the court took the case under advisement pending the receipt of briefs from the parties in support of their contentions. The briefs of the parties having been received, the court, after considering the pleadings, evidence, stipulations, and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

1. On the morning of May 13, 1958, certain investigators of the Alcohol and Tobacco Tax Unit, Internal Revenue Service, located an unregistered distillery in Alamance County, North Carolina. The distillery was found to be partially mashed in and some of the mash had just been run. The distillery was unattended at the time it was first located.

2. The investigators left with the intention of returning after dark on the same evening, when it was expected the distillery would be in operation.

3. Sometime after dark on the evening of May 13, the investigators returned and concealed themselves around the distillery. One of the investigators concealed himself under a tarpaulin that had been used to cover 21 cases (126 gallons) of nontaxpaid whisky.

4. About 3 o'clock on the morning of May 14, Ralph Woodrow Wilson, the respondent, drove a 1958 model Ford 4-door sedan automobile, Serial No. W8NC–124493, into the still yard. The automobile was driven from the only road which serviced the distillery, and was parked near the point where the 21 cases of nontaxpaid whisky were located. Wilson got out of the automobile and went to within about two feet of the whisky and looked around with his flashlight, and then went back to the 1958 model Ford automobile and opened the rear door and turned on the dome light. He then returned to the whisky, at which time he was placed under arrest by the investigator who had concealed himself under the tarpaulin covering the cases of whisky.

5. Wilson's first statement after being placed under arrest was "You've got me. You've got a good car, too." The investigator then asked him how many cases of whisky were under the tarpaulin and Wilson replied that there were 21 cases. The tarpaulin was then removed and the cases counted. It was found that there were 21 cases of whisky and 20 cases of empty fruit jars. Wilson then stated that the entire distillery belonged to him and that he had constructed it at a cost of approximately $10,000. The investigator then asked Wilson why he had come to the distillery and he replied that he had come after the 21 cases of liquor.

6. The mash capacity of the distillery was approximately fifteen thousand gallons. There were 10,395 gallons of fermenting mash in sixty-three 180-gallon olive barrels and 2,895 gallons of spent mash in twenty-eight 180-gallon olive barrels. The distillery itself was an 889-gallon metal upright still.

7. The 21 cases of whisky were in one-half gallon glass jars, with twelve jars to the case. No stamps were affixed to any of the jars or jar cases in-

dicating that the federal tax had been paid.

8. At the time Wilson stopped his automobile it was between the distillery boiler and the whisky, about eight feet from the boiler and about five feet from the whisky.

9. The Ford automobile in question was equipped with an Edsel motor, aluminum racing brakes, a special heavy duty chassis, overload springs on the rear, light switches on the dashboard which permitted the tail lights, brake lights and back-up lights, or any combination of these lights, to be turned on and off. These were all modifications that had been added to the original car. The rear seat was out of the automobile and the upholstering in the rear had the appearance of unusual wear.

10. Wilson informed the investigators that the back seat for the Ford automobile was at his house in the garage and that if the officers would take him by his home he would give it to them.

11. With respect to the heavy duty aluminum brakes, Wilson informed the investigators that he had taken the Ford automobile to Charlotte, North Carolina, and had the brakes installed at an expense in excess of $100. Wilson further stated that he could put 20 cases of whisky on the car and would not have to worry about highway patrolmen as he could take the turns without the brakes ever getting hot.

12. Wilson stated that the Ford automobile in question was his, that he had purchased it in Hillsboro, North Carolina, and had it registered fictitiously in the name of James L. Jackson, Route 1, Cedar Grove, North Carolina.

13. There was no evidence of sugar or any other distillery materials or equipment found in the Ford automobile.

14. The only other vehicle at the distillery at the time of Wilson's arrest was a 1946 Ford which was parked in the still yard a short distance east of the whisky. At about 4:20 A.M. a 1941 Plymouth was driven to within about 200 yards of the distillery, and at about 4:30 A.M. a Chevrolet truck loaded with 180 bags of coke came down the still road and parked in the still yard.

## Discussion

In the original libel of information, the Government seeks forfeiture of the Ford automobile under Sections 7301 and 7302 of the Internal Revenue Code of 1954, but later filed an amendment in which forfeiture is additionally claimed under Section 5601.

The facts herein found are not in dispute. The question for determination is whether or not these facts warrant forfeiture of the vehicle under one or more of the provisions of the Internal Revenue Code referred to in the libel of information.

The respondent relies principally on United States v. Lane Motor Company, 1953, 344 U.S. 630, 73 S.Ct. 459, 460, 97 L.Ed. 622, where it was held that a " * * * vehicle used solely for commuting to an illegal distillery is not used in violating the revenue laws." However, this case is no authority for the respondent's position here, because the use of the automobile, under the facts herein found, " * * * bears a much more direct and immediate relation to the unlawful activity." United States v. One 1956 Ford Tudor Sedan, 4 Cir., 1958, 253 F.2d 725, 726.

The evidence in this case clearly indicates that the vehicle in question was purchased for the sole purpose of transporting nontaxpaid whisky in violation of the Internal Revenue laws, that it had been so used in the past, and that the respondent intended to so use it on the morning in question. It should be borne in mind that the vehicle was purchased by the respondent Wilson, the owner of the distillery, and that it was registered in a fictitious name. After the purchase, Wilson equipped the vehicle with an Edsel motor, aluminum racing brakes, a special duty chassis, overload springs on the rear, and light switches which permitted the tail lights, brake lights and back-up lights to be turned on and off from the dashboard. If these modifica-

tions were not added to the vehicle so as to make it more suitable to transport nontaxpaid whisky, the burden was on the respondent to come forward with some explanation. This he has failed to do. Further, we have the respondent's own word as to how the modified equipment enabled him to outrun highway patrolmen with 20 cases of whisky aboard. Additionally, the respondent's words and conduct clearly indicate that he came to the distillery on the night in question with the specific intent of loading the 21 cases of nontaxpaid whisky in the rear of the Ford automobile and carrying it away. He stated he came to get the whisky and the only other vehicle in the still yard was a 1946 Ford. If he did not intend to load the whisky in his Ford automobile, it is difficult to see what explanation he could have for driving to within five feet of the whisky, for the rear seat having been left at home, and for opening the rear door and turning on the dome light after having first walked over to the point where the whisky was stored. The respondent in his brief states that all these factors do not preclude the possibility that the respondent intended to haul the whisky in the 1946 Ford automobile. This position is wholly unrealistic in view of all the circumstances, and particularly the fact that the respondent went to considerable expense to modify his Ford vehicle so as to make his position on the highway more safe in the event law enforcement officers attempted to apprehend him. See United States v. One 1955 Mercury Sedan, etc., 4 Cir., 1957, 242 F.2d 429; United States v. One Chevrolet Four-Door Sedan, 4 Cir., 1957, 244 F.2d 342; and United States v. One 1956 Ford Tudor Sedan, 4 Cir., 1958, 253 F.2d 725, and the cases cited in these decisions.

Also see United States v. One 1954 Mercury 2-Door Sedan, D.C.E.D.Va.1955, 128 F.Supp. 891, 892, where a number of vehicles were ordered forfeited by Judge Hoffman on facts far more favorable to the respondent than the facts in this case.

The evidence points irresistibly to the conclusion that the vehicle in question was found in the yard of a set-up and unregistered distillery, that both the automobile and the distillery were owned by the respondent, and that the respondent intended to use said vehicle, and had previously used same, in violation of the Internal Revenue laws relating to whisky.

Conclusions of Law

1. The Court has jurisdiction to hear and determine the issues involved in this action.

2. The 1958 Ford 4-Door Sedan, Serial No. W8NC–124493, is subject to forfeiture and should be condemned and forfeited to the United States of America.

A judgment of forfeiture will be entered upon presentation.